# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
CAROL G. CABLE,                  )
                                 )
            Plaintiff,           )
                                 )
       v.                        )        1:13CV465
                                 )
FEDEX FREIGHT, INC. and          )
CORRINE HOFFMAN, in her          )
capacity as Personal             )
Representative of the Estate     )
of GARY N. HOFFMAN, Deceased,    )
                                 )
            Defendants.          )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The instant case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants' Motion for Summary Judgment. (Docket Entry 33.) For the reasons that follow, the undersigned will recommend that the Court grant Defendants' instant Motion.

## BACKGROUND[1]

The instant case arises from a motor vehicle collision in Trinity, North Carolina. (Docket Entry 5, ¶ 8.) At the time of the incident, John Cable ("Cable"), Plaintiff's husband, drove a Ford pickup truck hauling a trailer with a Polaris (a four wheel all-terrain vehicle with a dump bed) and a Hustler Zero Turn riding

---

[1] The bulk of the information in this section comes from Plaintiff's Complaint (Docket Entry 5), or the depositions of Plaintiff (Docket Entry 34-5) and her husband (Docket Entry 34-6). Identification of the proponent(s) of other information in this section appears alongside such information.

lawn mower (Docket Entry 34-6 at 7)[2] with Plaintiff in the passenger seat on Rural Paved Road 1558 (Docket Entry 5, ¶ 8). From Rural Paved Road 1558, Cable entered the travel lane towards Interstate 85. (Id.) At that time, Defendant Hoffman[3] drove a FedEx tractor hauling three other FedEx tractors in a piggyback manner in the right hand lane of the interstate. (Docket Entry 34-6 at 11-12). According to both Kelley Jackson ("Jackson"), an accounting manager at J&J Drive-Away, Inc. ("J&J"), and Dona Caldwell ("Caldwell"), an advisor for liability and claims litigation for Defendant FedEx Freight, Inc. ("FedEx"), Defendant FedEx had hired J&J to haul the tractors from Florida to Maryland, and J&J contracted with Defendant Hoffman for the job. (Docket Entry 34-1, ¶¶ 9-12; Docket Entry 34-2, ¶¶ 8-9.) Before Cable entered the interstate, Defendant Hoffman switched from the right to the center lane, allowing Cable to merge onto the interstate. (Docket Entry 34-6 at 11-12).

Melanie Taylor ("Taylor"), a witness traveling in another vehicle, testified that shortly after Cable merged onto the

---

[2] Citations refer to the page numbers appended to the documents in the footer created upon filing via CM/ECF where they appear.

[3] Unfortunately, Gary Hoffman passed away during the pendency of this case. (See Docket Entry 10.) Corrine Hoffman, his wife and Personal Representative of his Estate, has replaced him as Defendant. (See Text Order dated Aug. 2, 2013.) However, for clarity, the undersigned will refer to Gary Hoffman as "Defendant Hoffman."

interstate, Cable's trailer began fishtailing. (Docket Entry 34-7 at 9-10.) Cable's truck swerved onto the right shoulder of the interstate. (Docket Entry 34-6 at 19.) Cable then turned his truck off of the right shoulder, spun counter clockwise, and ended up stopped in the far left lane facing oncoming traffic. (Id. at 20, 21.) Taylor stated that, as Cable swerved, Hoffman moved his tractor from the center lane to the left lane and "slammed on [his] brakes." (Docket Entry 34-7 at 6-7.) However, after Cable's truck stopped, Plaintiff looked over the hood of the truck and saw Defendant Hoffman's tractor less than two car lengths away from her. (Docket Entry 34-5 at 11-12.) As documented by the motor vehicle accident report, Hoffman then hit Cable's truck causing the piggybacked tractors to flip over Cable's truck and into the median. (Docket Entry 34-8 at 3.)

As a result of the collision, Plaintiff, her husband, and Defendant Hoffman each reported serious injuries. (See Docket Entry 5, ¶¶ 16-17; Docket Entry 8 at 8.) In addition, Plaintiff has stated that Cable's truck has a dent above the driver side rear wheel well that did not exist before the incident. (Docket Entry 34-5 at 13.) Plaintiff contends that the mud flap support bar[4] on Defendant Hoffman's tractor hit Cable's truck causing the dent. (See Docket Entry 36 at 4.) According to Plaintiff, that dent

---

[4] The parties interchangeably use the terms "mud flap bar," "mud flap bracket," "mud flap support," and "mud flap support bar." (See, e.g. Docket Entry 34 at 12; Docket Entry 36 at 7, 10.)

forms the basis for her assertion that Defendant Hoffman caused the collision.  (Docket Entry 34-5 at 13.)

Plaintiff, along with Cable, subsequently filed suit against Defendants Hoffman and FedEx alleging negligence.  (Docket Entry 5.)  Defendants counterclaimed and alleged that Cable negligently caused the collision.  (Docket Entry 8.)  Since those initial filings, various parties have settled with each other leaving only Plaintiff's claims against Defendant Hoffman for negligence and Defendant FedEx for vicarious liability.  (Docket Entry 34 at 2; Docket Entry 36 at 1.)  Defendants have moved for summary judgment on two grounds.  (Docket 34 at 7.)  First, Defendants argue that the record contains no evidence that Defendant Hoffman negligently and proximately caused the collision.  (Id. at 8.)  Second, Defendants alternatively argue that vicarious liability should not apply to Defendant FedEx because it neither employed nor had an agency relationship with Defendant Hoffman.  (Id. at 17.)

## ANALYSIS

The Court should grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  This standard requires more than a mere scintilla of evidence.  American

<u>Arms Intern. v. Herbert</u>, 563 F.3d 78, 82 (4th Cir. 2009).  In considering a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  <u>Miller v. Leathers</u>, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc).  The Court also must presume the credibility of all of the nonmovant's evidence.  <u>Id.</u>  The party seeking summary judgment has the initial burden to show an absence of evidence to support the nonmoving party's case.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  The opposing party then must demonstrate that a triable issue of fact exists; she may not rest upon mere allegations or denials.  <u>Anderson</u>, 477 U.S. at 248.  A party need not submit evidence in an admissible form, but the evidence must otherwise qualify for admission at trial.  <u>Celotex Corp.</u>, 477 U.S. at 324.  Finally:

> It is true that because of the peculiarly elusive nature of the concept of negligence, it is the rare personal injury case which may be properly disposed of by summary judgment.  But this is not to say that where . . . [an] unusual case is encountered, a plaintiff must have his day in court even though there is nothing to be tried.

<u>Bland v. Norfolk & S. R.R. Co.</u>, 406 F.2d 863, 866 (4th Cir. 1969) (internal citations omitted).

For the reasons articulated below, the undersigned recommends that the Court grant Defendants' instant Motion because the record contains insufficient evidence for a reasonable jury to find for Plaintiff.  Further, the record contains insufficient evidence for a jury to find Defendant FedEx vicariously liable for Defendant

5

Hoffman's actions. Therefore, the Court should grant Defendants' instant Motion.

## A.  Negligence

Plaintiff's proposed expert, James Norman Poer ("Poer"), does not satisfy the requirements of Federal Rule of Evidence 702. Because Poer does not qualify as an expert, Plaintiff cannot use his testimony to defeat Defendants' instant Motion. Absent Poer's testimony, the record contains no testimonial or physical evidence to show that Defendant Hoffman negligently caused the collision or had the last clear chance to avoid it.

### I.  Plaintiff's Proposed Expert

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In considering the admissibility of expert testimony, the Court exercises a gatekeeping function as to reliability and relevance. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). "The inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th

Cir. 1999) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 594-95 (1993)). In determining whether the Court should admit the expert's proposed testimony, "the [C]ourt has broad latitude to consider whatever factors bearing on validity that the [C]ourt finds to be useful . . . ." Id.

A review of Poer's qualifications and deposition confirms that Poer could not provide relevant expert testimony in this case.[5] An instructive case from the Western District of Texas provides valuable insight as to testimony from an accident reconstructionist. Moreno v. W.R. Davis Produce, Inc., No. A-06-CA-012 LY, 2007 WL 1731139, at *2-3 (W.D. Tex. June 14, 2007) (unpublished). In Moreno the district court evaluated whether a state trooper could testify as an expert witness. Id. The district court noted that the trooper did not have a college degree, had never taught a class on the subject, had not authored any papers on the subject, and did not make any independent calculations regarding the accident. Id. at 2. The district court excluded the trooper's testimony. Id. at 3. According to the Moreno court, the fact that the trooper's employer certified him

_____

[5] Under the circumstances presented, no need exists for a hearing on Poer's qualifications, see Morris v. Florida Transformer, Inc., 455 F. Supp. 2d 1328, 1332 (M.D. Ala. 2006) (evaluating expert's qualifications without hearing for purposes of summary judgment); Rudd v. General Motors Corp., 127 F. Supp. 2d 1330, 1334 n.3 (M.D. Ala. 2001) (collecting cases), as Plaintiff aptly stated Poer's qualifications in her Disclosure of Expert Testimony (Docket Entry 27) with further information provided in Poer's deposition (Docket Entry 37-5).

only to investigate accidents and not to reconstruct them clinched the argument, because the court could not permit the trooper to perform functions his employer would not. Id.

Similarly, Poer's qualifications reflect some capacity to investigate an accident but not to reconstruct it. For example, Poer's teaching history consists entirely of courses on crash investigation rather than reconstruction. (Docket Entry 27 at 7.) In addition, Poer's deposition reveals that Poer majored in accounting for his undergraduate degree. (Docket Entry 37-5 at 11.) Finally, as in Moreno, Poer's certification only as a traffic enforcer and crash investigator, rather than an accident reconstructionist, resolves all doubt. (Id. at 25-26.)[6]

In addition, Poer did not base his testimony on sufficient facts and data.[7] According to Poer's deposition, he derived his opinion testimony by looking at pictures of the collision,

---

[6] Poer notes that he has testified before as an accident reconstructionist in state court (Docket Entry 37-5 at 26-28), but that fact bears no weight, see Moreno, 2007 WL 1731139, at *3 n.1.

[7] This analysis poses one interesting wrinkle. In Plaintiff's Expert Disclosure, Poer lists the six sources he used in forming his opinion. (Docket Entry 27 at 6.) However, in his subsequent deposition, Poer states that in reaching his opinion he referred only to Cable's statement, the pictures, and the accident report. (Docket Entry 37-5 at 38-39, 44-46). Poer specifically denied ever going to the scene of the accident (id. at 45), looking at the vehicles involved (id. at 45), or talking or reading a statement from Plaintiff (id. at 74-75). These statements stand in stark contrast to the Expert Disclosure submitted by Plaintiff. (See Docket Entry 27 at 6.) These discrepancies confirm that the Court should not permit Plaintiff to rely on Poer's testimony.

reviewing the motor vehicle accident report, and considering what Cable told him.  (Id. at 38-39).   During Poer's deposition, Defendants' counsel questioned Poer on the steps he took to form his opinion:

> Q.  All right.   Did you -- so you didn't do any research -- you didn't look at anything on the computer, you didn't pull out any books, you didn't pull out any of your accident reconstruction materials?
> A.  No, sir.
> Q.  Okay.  Did you talk to any one besides Mr. Cable, interview anybody?
> A.  No, sir.
> Q.  All right.  He obviously told you that there had been an accident reconstructionist involved?
> A.  Yes, sir.
> Q.  Did you ask who that was?
> A.  No, sir.
> Q.  Did you call that accident reconstructionist?
> A.  No, sir.
> Q.  Did you call any of the highway patrolmen involved?
> A.  No, sir.
> Q.  Did you go to the scene?
> A.  No, sir.
> Q.  Did you go look at any vehicles?
> A.  No, sir.
> Q.  Did you take any measurements?
> A.  No, sir.
> Q.  Did you do any independent investigation, other than look at photographs and [the] accident report?
> A.  No, sir.
> Q.  Did you make any determination about skid marks?
> A.  No, sir.
> Q.  Did you refer to any published documentation, references, journals, or other materials?
> A.  No, sir.
> Q.  Did you review any depositions?
> A.  No, sir.

(Id. at 45-46.)

The paucity of facts and data Poer used to form his opinions undermine the reliability of his proffered opinions.  Because

expert testimony can "'be both powerful and quite misleading,'" the Court must ensure its reliability. Westberry, 178 F.3d at 261 (quoting Daubert, 509 U.S. at 595). Here, Poer did not have sufficient facts from which to draw his opinions, and the Court therefore cannot rely on Poer's analysis. See Smithers v. C & G Custom Module Hauling, 172 F. Supp. 2d 765, 771 (E.D. Va. 2000) ("A valid scientific theory misapplied because of the lack of sufficient factual foundation cannot be admitted because it does not assist and, indeed, may ultimately confuse the fact finder.").

Finally, the basis for some of Poer's opinions do not fall within the scope of permissible expert testimony. For example, in regards to the dent on Cable's truck, Defendants have hypothesized that the truck jacknifed[8] causing the bumper of the Polaris to strike the side of the truck when Cable turned from the right hand shoulder to the far left lane. (Docket Entry 34-3 at 12.) In disputing this theory, Poer stated:

> A.   In looking at the pictures, the trailer hitch on the truck is still intact. The tongue of the trailer is still intact. The safety chains are still attached. And it's physically impossible for the trailer to turn that far with all of those things still attached. There's no math that needs to be done to figure that out.

_____

[8] "When a truck jackknifes, the rear wheels of the towing vehicle skid sideways or the rear of the tractor swings toward the front. The result is a folding motion that may, within a few seconds, force the tractor and trailer into a right-angled relationship to each other." 66 Am. Jur. Proof of Facts 3d Proof of Negligence in a Turning Accident or Jackknifing of a Truck § 1 (2002).

```
Q.    Just common-sense?
A.    That's common-sense.
```

(Docket Entry 37-5 at 48.)  Poer later repeated that he formed the foregoing opinion by applying common-sense.  (Id. at 114, 115.) The Court should admit an expert's testimony if the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a).  Here, where Poer based his opinion not on "scientific, technical, or other specialized knowledge" but on common-sense, no basis exists to permit Poer to provide the proffered testimony.  See United States v. Harris, 995 F.2d 532, 534 (4th Cir. 1993) ("Exercising its discretion, the court should consider whether the testimony is within the common knowledge of the jurors.  This type of evidence, almost by definition, can be of no assistance to a jury." (internal citation omitted)); 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6264 n.8 (1997) (collecting cases).

In sum, the undersigned finds Poer's proffered expert testimony inadmissible, and thus of no value in contesting Defendants' instant Motion.

## II.  Evaluating the Merits

Plaintiff alternatively asserts that Defendant Hoffman either negligently caused the collision or had the last clear chance to avoid the collision.  (Docket Entry 36 at 1.)  In North Carolina, negligence requires: "1) legal duty; 2) breach of that duty; 3)

11

actual and proximate causation; and 4) injury." <u>Mabrey v. Smith</u>,
144 N.C. App. 119, 122, 548 S.E.2d 183, 186 (2001).  The last clear
chance doctrine requires that: "(1) [P]laintiff, by her own
negligence put herself into a position of helpless peril; (2)
Defendant discovered, or should have discovered, the position of
the [P]laintiff; (3) Defendant had the time and ability to avoid
the injury; (4) Defendant negligently failed to do so; and (5)
Plaintiff was injured as a result of the [D]efendant's failure to
avoid the injury." <u>McDevitt v. Stacy</u>, 148 N.C. App. 448, 459, 559
S.E.2d 201, 210 (2002) (internal quotation marks omitted).  The
undersigned will address each theory in turn.

### a.  Initial Impact Theory

Plaintiff asserts that Defendant Hoffman negligently hit
Cable's truck with Defendant Hoffman's tractor causing Cable's
truck to spin out and ultimately to collide with Defendant
Hoffman's tractor (Docket Entry 5, ¶ 12), a theory which Defendants
have dubbed the "initial impact theory" (Docket Entry 34 at 10).
Plaintiff contends that she has "conclusively establishe[d]
evidence of the initial impact . . . ."  (Docket Entry 36 at 10.)
However, Defendants argue that the record lacks any evidence to
support the initial impact theory.  (Docket Entry 34 at 10.)
Specifically, Defendants argue that no witnesses ever testified to

an initial impact, and that the physical evidence does not support Plaintiff's initial impact theory. (<u>Id.</u> at 10-12.)[9]

### i.  Testimonial Evidence

Three witnesses (Taylor, Cable, and Plaintiff) have testified regarding the incident. Taylor recounted her first-hand observations in a deposition. (<u>See</u> Docket Entry 34-7.) According to Taylor, immediately before the collision, she drove on Interstate 85 in the far left lane while Defendant Hoffman's tractor occupied the center lane and Cable's truck occupied the far right lane. (<u>Id.</u> at 18.) Taylor described the vehicles as traveling in a diagonal line, giving her a view of each lane and vehicle. (<u>Id.</u>) Further, Taylor averred that, after Cable's pickup merged onto the highway, it began to swerve. (<u>Id.</u> at 4-5.) Taylor stated that, at the time Cable's truck started swerving, Defendant's tractor remained behind and to the left of Cable's truck. (<u>Id.</u> at 5.) Taylor's testimony reflects that Cable's truck then swivelled, and made a 180-degree turn in front of Defendant Hoffman's tractor. (<u>Id.</u>) Taylor testified that Defendant Hoffman then slammed on his brakes and swerved his tractor to the left lane to avoid Cable's truck, but the two still collided. (<u>Id.</u> at 6-7.) Finally, Taylor denied that Defendant Hoffman's tractor ever

---

[9] Defendants also addressed a third issue Plaintiff had argued relating to a possible paint transfer from Defendant Hoffman's tractor to Cable's trailer (Docket Entry 34 at 13-14), but Plaintiff did not address the issue in her response brief (<u>see</u> Docket Entry 36), so the undersigned will treat it as abandoned.

contacted Cable's truck, and asserted that all vehicles maintained their lanes prior to Cable's truck going onto the shoulder. (<u>Id.</u> at 6.)

According to Cable's testimony, as he moved onto the entrance ramp and towards Interstate 85, he looked to his left and saw Defendant Hoffman in the far right lane. (Docket Entry 34-6 at 10-11.) As Cable continued onto the ramp and towards the interstate, Defendant Hoffman moved to the center lane to give Cable room to merge. (<u>Id.</u> at 11.) Cable testified that sometime after he moved into the right-hand lane he felt pushed to the right and went off the road. (<u>Id.</u> at 16.) Cable clarified that "it felt like the wind came off of us, like we were pushed." (<u>Id.</u> at 17.) On further elaboration, Plaintiff said:

    A.    Have you ever driven beside a tractor-trailer and
          the air moves between you two —
    Q.    Many times.
    A.    — and you get pushed?  I felt like I got pushed.
    Q.    Did you feel like there was any impact?
    A.    I felt as if I went this way.    (Witness
          indicating.)
    Q.    Went to your right?
    A.    I went to my right, and my body went like this.
          (Witness indicating.)
    Q.    And my question is, did you feel any impact between
          the vehicles, or did you just feel like that – you
          said to me that the air between the vehicles —
    A.    I felt turbulence.
    Q.    You felt turbulence?
    A.    I felt turbulence.

(<u>Id.</u> at 17-18.) As for Plaintiff, when asked about whether she felt any impact from another vehicle, she stated "I didn't – no, I

don't know that I could – I wasn't sure what happened." (Docket
Entry 34-5 at 4.)

Defendants believe that these depositions provide no evidence
to support the initial impact theory. (Docket Entry 34 at 10-11.)
Plaintiff counters that Cable's own words establish the existence
of an initial impact. (See Docket Entry 36 at 10.) In that
regard, Plaintiff cites Cable's statement "[w]e got pushed off to
the right," and that his body shifted to the right. (Id.)
Plaintiff also attempts to discredit Taylor's account. (See id. at
6, 10.)

Plaintiff's arguments fail. First, Plaintiff cites Cable's
testimony out of context. As more fully quoted above, Cable made
clear that his comment regarding feeling "pushed" referenced a
change in airflow, not impact. Despite multiple opportunities,
Cable never said he felt contact with Defendant Hoffman's tractor.
Under these circumstances, reading Cable's testimony as saying, "I
felt the tractor strike my truck," does not constitute a reasonable
construction of the evidence.

Second, Plaintiff's attack on Taylor's testimony does not
advance Plaintiff's position. Plaintiff claims that Taylor could
not have seen Cable's truck or any contact between Cable's truck
and Defendant Hoffman because she occupied the far left lane,
Defendant Hoffman's sizeable tractor occupied the middle lane, and
Cable occupied the far right lane. (Id. at 10-11.) Although

Taylor may not have seen whether the mud flap support bar impacted Cable's truck, that fact does not tend to establish that any impact occurred.[10]

In sum, Defendants have adequately shown that Plaintiff lacks any testimonial evidence of an initial impact by which Defendant Hoffman caused the collision.

## ii. Physical Evidence

In regards to physical evidence, Plaintiff relies on a dent on Cable's truck above the driver's side rear wheel well to show that Defendant Hoffman's tractor's mud flap support bar hit the side of Cable's truck, causing the collision. (Docket Entry 34-5 at 13.) The record does not contain sufficient evidence to support Plaintiff's contention.

Plaintiff states, uncontested, that the dent did not exist before the crash. (Id.) Plaintiff argues, through Poer, that Defendant Hoffman's tractor could have created the dent when it collided with Cable's truck in the initial impact; although Poer does not state who hit whom. (Docket Entry 37-5 at 73.) Defendants' expert witness contends that the dent on Cable's truck

---

[10] For similar reasons, it matters not that Taylor failed to advise the highway patrol about the absence of contact between Defendant Hoffman's tractor and Cable's truck prior to the latter spinning out. In other words, where neither Cable nor Plaintiff actually testified to feeling an initial impact, no testimonial evidence would permit a fact-finder to conclude an initial impact occurred, without regard to any alleged grounds for impeaching Taylor's report on this point.

occurred when Cable turned from the shoulder back onto the freeway, causing the trailer to jackknife and the Polaris to strike the truck. (Docket Entry 34-3 at 12.) Defendants' expert states that the height of the Polaris's bumper matches the height of the dent. (Id. at 10.) Defendants' expert disputes Plaintiff's theory that Defendant Hoffman's tractor's mud flap support bar caused the dent on Cable's truck (id. at 12) because, according to Defendants' expert, the height of the mud flap support bar and dent do not match (id. at 10).

Defendants' expert further opines that the loading configuration of the equipment on the trailer caused the collision. (Id. at 11.) The trailer had the heavier lawnmower on the back of the trailer, behind the axles, and, according to Defendants' expert, this configuration could create lifting forces. (Id.) Defendants' expert states that those lifting forces combined with Cable driving at highway speeds caused Cable to lose control of the truck. (Id.)

Plaintiff's response to Defendants' expert falls short. Plaintiff relies entirely on Poer's newly attached affidavit to counter Defendants' expert's analysis. (See Docket Entry 36-1.) However, as mentioned, Poer lacks the necessary qualifications to testify as an expert, and thus, Plaintiff cannot rely on Poer's newly attached affidavit to defeat Defendants' instant Motion. Plaintiff argues Cable's testimony, cited below, that he did not

see the trailer in his mirror matches her theory that Defendant Hoffman struck Cable's truck on the side. (Docket Entry 36 at 9.) However, Defendants' expert asserts that in order for the mud flap support bar to contact Cable's truck, the front of Defendant Hoffman's tractor would have to extend four feet in front of Cable's front bumper. (Docket Entry 34-3 at 10.) Plaintiff disputes Defendants' expert's measurements, stating that "this does not accurately reflect the testimony of John Cable and other evidence." (Docket Entry 36 at 9.) However, Plaintiff does not provide a citation to the record to demonstrate that Defendants' expert incorrectly calculated the lengths of Defendant Hoffman's tractor and Cable's truck. (See id. at 9-12.)

When asked whether Cable saw Defendant Hoffman's tractor re-enter the far right travel lane, Cable said:

> A.  No, sir.
> Q.  All right.
> A.  I didn't see anything in my mirror. Again, I've claimed -- I've already looked in my mirrors. I'm looking forward. There was no reason to look in my mirrors. [Plaintiff] and I were talking, like we always do, and just we were going forward, and then in a matter of just a few seconds we're going this way. (Witness indicating.)
> Q.  Well, if the FedEx truck is beside you, I take it you can see it. Did you see the FedEx truck beside you?
> A.  He never come [sic] up to my pillar.

(Docket Entry 34-6 at 18 (emphasis added).) Cable's testimony thus makes it clear that Defendant Hoffman's tractor never made it far

enough forward for the mud flap support bar to make the dent on Cable's truck.

In sum, Defendants have established that the record lacks any physical evidence to show that Defendant Hoffman caused the collision, and therefore Plaintiff's initial impact theory fails as a matter of law.

### b. Last Clear Chance Theory

"The doctrine [of last clear chance] contemplates a last 'clear' chance, not a last 'possible' chance, to avoid the injury; it must have been such as would have enabled a reasonably prudent man in like position to have acted effectively." Culler v. Hamlett, 148 N.C. App. 372, 379, 559 S.E.2d 195, 200 (2002).

> [T]he doctrine of last clear chance is invoked 'only in the event it is made to appear that there was an appreciable interval of time between the plaintiff's negligence and his injury during which the defendant, by the exercise of ordinary care, could or should have avoided the effect of plaintiff's prior negligence.' Where there is no evidence that a person exercising a proper lookout would have been able, in the exercise of reasonable care, to avoid the collision, the doctrine of last clear chance does not apply.

Watson v. White, 309 N.C. 498, 506, 308 S.E.2d 268, 273 (1983) (quoting Mathis v. Marlow, 261 N.C. 636, 639, 135 S.E.2d 633, 635 (1964)).  Moreover, the doctrine of sudden emergency "provides that one who is faced with a sudden emergency is not required to exercise the same standard of care as he might be required to exercise if he had more time to respond to the danger before him."

<u>Casey v. Fredrickson Motor Express Corp.</u>, 97 N.C. App. 49, 56, 387 S.E.2d 177, 181 (1990).

Defendants challenge Plaintiff's last clear chance claim. (<u>See</u> Docket Entry 34 at 14-17.) According to Defendants, Plaintiff offers no evidence to show that Defendant Hoffman had sufficient time and ability to avoid the collision. (<u>Id.</u>) In response, Plaintiff points to Defendant Hoffman's statement to the highway patrol that he "saw [Cable] come onto [the] interstate [and] saw trailer start fish tailing [which] threw [Cable] off to right of rd. [Whereupon Cable] overcorrected and came back across [the] interstate [and] then [Cable's truck] started to roll." (Docket Entry 36-2 at 45.) However, the statement does not say when Defendant Hoffman saw Cable fishtail or how much time passed from the initial fishtailing until Cable overcorrected.

Plaintiff thus has not demonstrated that Defendant Hoffman had the "last clear chance" to avoid the collision because Plaintiff has not put forth a time line to show when Defendant Hoffman should have known of Cable's troubles, when Defendant Hoffman should have reacted, and whether Defendant Hoffman could have reacted in time. In other words, Plaintiff has not provided evidence that Defendant Hoffman could have avoided the collision. <u>See generally</u>, Annotation, 135 A.L.R. 1404, <u>Opinion Evidence As to Distance Within Which Automobile Can Be Stopped</u>, § III (1941) (collecting cases where courts allowed either experts or people very familiar with

the vehicles to testify regarding their stopping capabilities).

The undisputed evidence shows that Defendant Hoffman swerved his tractor into the far left lane - away from the right lane where Cable drove. (Docket Entry 34-7 at 11.) Further, Taylor testified that she saw Defendant Hoffman's brake lights activate before she drove into the median to avoid Defendant Hoffman's tractor. (Id. at 24.) Plaintiff's testimony similarly shows that Defendant Hoffman had little opportunity to avoid the collision. By the time Cable maneuvered the truck off of the right shoulder, turned back onto the road, and spun counter clockwise to stop in the far left lane, less than two car lengths separated Cable's truck and Defendant Hoffman's tractor before they collided. (Docket Entry 34-5 at 11-12.)

Under these circumstances, Plaintiff has failed to produce evidence sufficient to establish that Defendant Hoffman could have avoided the collision and that he negligently failed to do so. As a result, Plaintiff's last clear chance theory fails as a matter of law.

## B.  Vicarious Liability

In the alternative, Defendant FedEx asserts that, even if Plaintiff's claims against Defendant Hoffman could survive summary judgment, vicarious liability does not extend to it because it did not employ nor possess an agency relationship with Defendant Hoffman. (Docket Entry 34 at 18-20.) As to that argument,

Plaintiff first contends that the inadequacy of Defendants' discovery responses and supporting evidence should preclude them from arguing that Defendant FedEx did not employ Defendant Hoffman. (Docket Entry 36 at 7-8.) Second, Plaintiff submits that a genuine dispute of fact exists as to Defendant FedEx's relationship with Defendant Hoffman. (Id. at 4.)

I. Objections

Plaintiff objects to Defendants' cited support for their contention that Defendant FedEx did not employ Defendant Hoffman. (Id. at 7-8.) Plaintiff's objections encompass two points, first that Defendants failed to provide certain documentation and proof of Defendants' employment relationship in discovery, and second that Defendants submitted an affidavit from Jackson containing inadmissible legal conclusions. (See id.) As an initial matter, Plaintiff does not cite or provide any legal basis to support these arguments. (See id.) "It is not the role or responsibility of the Court to undertake the legal research needed to support or rebut a perfunctory argument." Hayes v. Self-Help Credit Union, No. 1:13-CV-880, 2014 WL 4198412, slip op. at *2 (M.D.N.C. Aug. 22, 2014) (unpublished). Notwithstanding that failure, the undersigned will review the issues raised by Plaintiff.

Plaintiff's contention that the Court should estop Defendants from submitting information regarding Defendants' employment relationship status falls short.  Plaintiff argues that Defendants failed to adequately answer Interrogatories and Requests for Production regarding the Defendants' employment relationship. (See Docket Entry 36 at 7-8.)   However, the record belies such an assertion.   Plaintiff attaches to her brief excerpts from discovery, and those excerpts contain responses wherein Defendants informed Plaintiff that Defendant Hoffman did not work for Defendant FedEx and that Plaintiff should contact J&J for more information.   (Docket Entry 36-2 at 16, 38.)   Further, in connection with their instant Motion, Defendants produced a more complete version of their discovery responses wherein they repeatedly stated that Defendant FedEx did not employ Defendant Hoffman and that Plaintiff should contact J&J. (See Docket Entry 37-2 at 4, 6, 8, 10-11, 12, 13, 16, 27.)   Defendants also informed Plaintiff that they should contact Jackson for information regarding Defendant Hoffman's employment.   (Docket Entry 37-3 at 15-16.)   Finally, Defendants have stated that they produced the picture and cargo slip on which they rely as to this part of the instant Motion.  (See Docket Entry 37 at 3.)

The record demonstrates that Defendants put Plaintiff on notice that they did not consider Defendant Hoffman an agent of

Defendant FedEx, but rather of J&J.  Despite that notice, Plaintiff apparently failed to take further steps to explore the issue. Additionally, Plaintiff has not specifically stated what information Defendants allegedly did not produce that they now rely on.  (See Docket Entry 36 at 7-8.)  Under these circumstances, Plaintiff has not established grounds to preclude Defendant FedEx from challenging Plaintiff's vicarious liability theory.

### b.  Legal Conclusions

Plaintiff's contention that Jackson's affidavit contains conclusory legal conclusions does have merit.  Legal opinions do not qualify as facts for purposes of summary judgment, and courts may disregard such opinions.  See Pfeil v. Rogers, 757 F.2d 850, 862 (7th Cir. 1985); see also Hadeed v. Abraham, 265 F. Supp. 2d 614, 619 n.17 (E.D. Va. 2003) (citing Pfeil, 757 F.2d at 862-63); 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 (3d ed.) ("Thus, ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion."); cf. United States v. McIver, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible.").

Jackson's affidavit states: "[Defendant Hoffman] was an independent contractor providing truck driving services to J & J." (Docket Entry 34-1, ¶ 7.)  Under North Carolina law, this statement

qualifies as a legal conclusion. <u>Yelverton v. Lamm</u>, 94 N.C. App. 536, 538, 380 S.E.2d 621, 623 (1989) ("Whether one is an independent contractor or an employee is a mixed question of law and fact. The factual issue is: What were the terms of the parties' agreement? Whether that agreement establishes a master-servant or employer-independent contractor relationship is ordinarily a question of law."). Accordingly, the Court should not consider that paragraph of the affidavit, but the Court need not strike the entire affidavit, <u>see</u> <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 962 (4th Cir. 1996) (upholding a district court's decision to strike portions of an affidavit); <u>Moret v. Green</u>, 494 F. Supp. 2d 329, 336 (D. Md. 2007) (holding that, "[i]f portions of an affidavit are inadmissible, the whole affidavit need not be stricken but only those portions which are deficient").

## II. Employment Status

Under the doctrine of respondeat superior, vicarious liability applies when: (1) the negligence of the tortfeasor injures the plaintiff, (2) an employer and employee or a principal and agent relationship existed between the tortfeasor and the party charged with liability, (3) the negligence of the tortfeasor occurred in the course of his employment or in the scope of his authority, and (4) the tortfeasor engaged in the work of the employer/principal at the time of the injury. <u>See</u> <u>Estes v. Comstock Homebuilding Co.</u>, 195 N.C. App. 536, 540, 673 S.E.2d 399, 402 (2009). However,

respondeat superior does not typically apply to independent contractors in the performance of the contracted work. See Coastal Plains Utils. v. New Hanover Cnty., 166 N.C. App. 333, 344, 601 S.E.2d 915, 923 (2004). Further, North Carolina General Statute Section 20-71.1 provides that the proof of registration for a motor vehicle constitutes "prima facie evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment." Notwithstanding the evidentiary character of the foregoing rule, see Atkinson v. Lesmeister, 186 N.C. App. 442, 446, 651 S.E.2d 294, 297 (2007), this Court (per now Senior United States District Judge James A. Beaty, Jr.) has used the statute to evaluate the existence of an agency relationship, see Shinn v. Greeness, 218 F.R.D. 478, 483-84 (M.D.N.C. 2003).

With those vicarious liability principles in mind, Defendants have shown "an absence of evidence to support [Plaintiff's] case," Celotex Corp., 477 U.S. at 325, and Plaintiff has not pointed to evidence in the record to the contrary. Rather, Plaintiff has relied entirely on her objection to the admissibility of Defendants' attachments for summary judgment - described above - to refute the vicarious liability portion of Defendants' instant Motion. Although the Court need not scour the record to determine the disputed facts, see Stephenson v. Pfizer Inc., No. 1:13CV147,

2014 WL 4410580, at *1 n.1 (M.D.N.C. Sept. 8, 2014) (unpublished), the undersigned has reviewed the record to ensure an accurate recommendation.

Defendants argue that Defendant FedEx had neither an agency nor employment relationship with Defendant Hoffman; rather, Defendant Hoffman contracted with J&J who in turn contracted with Defendant FedEx. (See Docket Entry 34 at 17.) Defendants specifically note that the FedEx tractors driven by Defendant Hoffman used J&J's Department of Transportation registrant number and not Defendant FedEx's. (Id.) Under North Carolina General Statute Section 20-71.1(b), that fact supports a finding that Defendant Hoffman operated as J&J's agent and not Defendant FedEx's. See Shinn, 218 F.R.D. at 483.

Furthermore, Defendants have tendered evidence from both Defendant FedEx and J&J stating that Defendant FedEx had neither an employment nor agency relationship with Defendant Hoffman. Jackson averred that Defendant FedEx contracted with J&J to transport the tractors from Florida to Maryland. (Docket Entry 34-1, ¶ 9.) Jackson further swore that, in contracting with J&J, Defendant FedEx did not have any right to control or direct their operations or the operations of Defendant Hoffman. (Id., ¶ 10.) Also, Defendant FedEx did not pay Defendant Hoffman, according to Jackson. (Id.) In addition, Caldwell submitted an affidavit similar to Jackson's. (See Docket Entry 34-2.) Caldwell declares

that Defendant FedEx contracted with J&J to transport the tractors and not Defendant Hoffman. (Docket Entry 34-2, ¶ 6.) Further, Defendant FedEx paid J&J and not Defendant Hoffman. (Id., ¶ 9.) These affidavits bolster the statutory presumption against a finding of vicarious liability for Defendant FedEx.

In sum, Defendants have offered unrebutted evidence that Defendant FedEx neither employed nor possessed an agency relationship with Defendant Hoffman. Plaintiff has not submitted any evidence to create a genuine dispute of material fact as to the relationship between Defendants. Therefore, the Court should find that vicarious liability does not apply to Defendant FedEx for Defendant Hoffman's alleged negligence.

### CONCLUSION

Defendants have shown that the record contains no facts to support Plaintiff's argument that Defendant Hoffman caused the collision, or that Defendant Hoffman had the last clear chance to avoid the collision. Further, Defendants have established that Plaintiff's vicarious liability theory as to Defendant FedEx fails as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 33) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 2, 2014